A05A1444. VELASQUEZ v. THE STATE.
(623 SE2d 721)

SMITH, Presiding Judge.

Chirinos Ismael Velasquez was charged by accusation with one count of forgery in the second degree and one count of driving without a license. He was found guilty of both offenses after a bench trial. Although forgery in the second degree is a felony, the trial court imposed a misdemeanor sentence for both offenses. Velasquez appealed the judgment of conviction and sentence to the Georgia Supreme Court. The Supreme Court transferred the appeal to this court on the basis that no constitutional issue was raised or ruled on below.

Velasquez contends that the "rule of lenity" should apply, based on his argument that the conduct prohibited by the felony forgery statute is identical to that prohibited by the misdemeanor false ID statute. He also asserts the general grounds, arguing that the State failed to prove the intent to defraud required by the forgery statute. While we do not agree that the conduct prohibited by the two statutes is identical, we must reverse the judgment of conviction because the State failed to prove intent to defraud.

The evidence presented at trial showed that two Hall County deputy sheriffs were on patrol in the Gainesville area when they stopped a vehicle with a broken windshield. When one of the deputies asked the driver for his license, he offered a "licensia de conducir" apparently issued in 2002 by the Mexican state of Tamaulipas in the name of "Chirinos Velazquez Ismael."[1] After Velasquez was placed under arrest for driving without a valid license, the deputy found an additional piece of identification in his wallet. This document was a North Carolina DMV identification card issued in 1999 in the name of Jonas Oviedo Olvera. Such a card is for identification only and is not a valid license for driving in Georgia. Both pieces of identification included Velasquez's photograph. The deputy testified that he ran the information on the North Carolina card through the Georgia Crime Information Center ("GCIC") because many individuals have both an identification card and a driver's license. In this case, however, he found that the driver did not have a North Carolina driver's license. After this investigation, Velasquez was charged with forgery in the second degree.

The statute setting forth the elements of forgery in the second degree, OCGA § 16-9-2 (a), provides:

> A person commits the offense of forgery in the second degree when with the intent to defraud he knowingly makes, alters, or possesses any writing in a fictitious name or in such manner that the writing as made or altered purports to have been made by another person, at another time, with different provisions, or by authority of one who did not give such authority.

The false ID statute, OCGA § 16-9-4 (b) (1), provides: "It shall be unlawful for any person to knowingly possess, display, or use any false, fictitious, fraudulent, or altered identification document."

1. Velasquez argues that the offenses of forgery in the second degree and possession of a false ID are so similar as to be identical. He maintains therefore that the "rule of lenity" enunciated in *Dixon v. State*, 278 Ga. 4 (596 SE2d 147) (2004), requires that he be convicted of the latter offense, a misdemeanor, rather than the former, a felony. But *Dixon* involved conflicting definitions of the "exact same conduct as either misdemeanor statutory rape or felony child molestation." Id. at 6 (1) (a). Here, as the trial court correctly observed, the two offenses plainly require different conduct. Forgery in the second degree requires the element of "intent to defraud," while the false ID statute

---

[1] The spelling of appellant's name varies in the record.

requires only that the defendant "knowingly possess, display, or use any false, fictitious, fraudulent, or altered identification document." OCGA § 16-9-4 (b) (1). While a violation of the false ID statute might constitute a lesser included offense of forgery in the second degree, the statute does not define "the exact same conduct" as OCGA § 16-9-2 so as to invoke the rule enunciated in *Dixon*. This argument is without merit.

2. The facts as presented to the trial court, however, do not establish intent to defraud beyond a reasonable doubt. "A person will not be presumed to act with criminal intention but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." OCGA § 16-2-6. "Forgery, like fraud or any other fact, may be proved by circumstantial evidence." (Citations and punctuation omitted.) *Dyous v. State*, 195 Ga. App. 99-100 (2) (392 SE2d 730) (1990).

OCGA § 16-2-1 provides: "A 'crime' is a violation of a statute of this state in which there is a joint operation of an act or omission to act and intention or criminal negligence."

> A crime or misdemeanor shall consist in the violation of a public law in the commission of which there must be a union or joint operation of act and intention, or criminal negligence. While in criminal cases the question of intent is one entirely for the jury, yet where, from all of the facts and circumstances in the case, an intent to defraud is not reasonably deducible, there can be no conviction of an offense of which an intent to defraud is necessarily an essential element.

(Citations and punctuation omitted.) *Coffee v. State*, 219 Ga. 328, 333 (6) (133 SE2d 590) (1963).

OCGA § 16-9-2 (a) does not require that a writing be presented or delivered, but only that a person "possess[ ] any writing in a fictitious name." *Browning v. State*, 174 Ga. App. 759, 760 (1) (331 SE2d 625) (1985). Intent to defraud is most commonly proved by showing delivery or use of the writing, or some other associated writing. "Knowingly passing as genuine a forged instrument is evidence of the intent to defraud." (Citations omitted.) *Heard v. State*, 181 Ga. App. 803 (1) (354 SE2d 11) (1987). Intent may also be shown with reference to a document which was not presented or negotiated by the defendant's contemporaneous attempts to present other, related documents. For example, in *Browning*, supra, the appellant was convicted of forgery in the first degree for attempting to negotiate a check drawn on a closed bank account. Another check from the same account was found in his car, and this court upheld his conviction for

forgery in the second degree with reference to the unpresented check. Although he did not attempt to negotiate the second check, this court held that the evidence of his attempts to negotiate the first check, as well as his possession of a third check and his attempt to flee the scene, sufficed to support the jury's finding of an intent to defraud. Id. at 760-761 (3).

No such evidence was shown here. When stopped by the police, Velasquez did not present the North Carolina identification card; it was only found in a search of his person after his arrest. The State did not show that Velasquez had ever presented the identification card to anyone at any time; all that was shown was mere possession. Nor did the State allege or show that the Mexican "licensia de conducir" presented by Velasquez to the officer was forged or fraudulent. For presenting this document, Velasquez was charged and convicted of failure to have a license valid for driving in Georgia.

The State argues that the "totality of the circumstances" was sufficient to support a finding of an intent to defraud, based on Velasquez's possession of the North Carolina card. At trial, the prosecutor contended that for the photograph to appear on a public document issued by a government agency, Velasquez had to appear in person, be photographed, and falsely inform the government agency that his name was Jonas Oviedo Olvera. But the State introduced no evidence regarding the method by which Velasquez may have obtained the identification card, and this argument therefore amounts to mere speculation. No evidence was presented that Velasquez himself obtained the card or made any representations to North Carolina authorities or even that Velasquez was ever in North Carolina.

In addition, the State's proposed interpretation runs afoul of the language employed by the General Assembly in OCGA § 16-9-4 (b) (1). The other subsections of OCGA § 16-9-4 (b) specify a particular intent on the part of the offender, whether an intent to sell, deliver, or distribute, as in subsections (b) (2), (3), and (5), or "in furtherance of a conspiracy or attempt to commit a violation of the criminal laws," as in subsection (4), or in possessing another's identification document unless it is done "with the intent to restore it to the other person," as in subsection (6). Only OCGA § 16-9-4 (b) (1) criminalizes possession without any reference to intent.

This being so, if we accepted the State's interpretation that mere possession of a fraudulent identification card constitutes evidence of intent to defraud, the offense of possession of a false identification document under OCGA § 16-9-4 (b) (1) would be completely subsumed in the offense of fraud in the second degree under OCGA § 16-9-2 (a) and rendered superfluous. "Under the rules of statutory construction, we must construe all related statutes together, give

meaning to each part of the statute, and avoid constructions which result in surplusage and meaningless language. [Cit.]" *Lawson v. State*, 224 Ga. App. 645, 647 (3) (a) (481 SE2d 856) (1997). As a result, for purposes of forgery in the second degree by possessing a fraudulent identification card, the intent to defraud must be shown by some evidence beyond mere possession of the card. This the State failed to show.

"The intent to defraud being an essential element in the offense of forgery and affirmative proof thereof being necessary to authorize a conviction, a record showing no proof of such intent will demand a reversal of the conviction." (Citation and punctuation omitted.) *Goldstein v. State*, 94 Ga. App. 437, 438 (4) (95 SE2d 47) (1956). Velasquez did not use the North Carolina card at the time of the alleged offense, nor did the State show that he made any representations to the police officer or anyone else regarding the card. The State failed to show the circumstances under which he obtained the card, and it failed to show any "words, conduct, demeanor, motive" or other circumstance supporting a finding of intent to defraud. OCGA § 16-2-6. The evidence presented was insufficient to support the conviction.

*Judgment reversed. Ellington and Adams, JJ., concur.*

DECIDED NOVEMBER 23, 2005.

*Carter & Kennedy, David S. Kennedy, Jr., Arturo Corso*, for appellant.

*Jason J. Deal, District Attorney, Gregory E. Radics, Assistant District Attorney*, for appellee.