S10A0256. CHANNELL et al. v. HOUSTON.

(699 SE2d 308)

HINES, Justice.

Dene Channell, Marion Rhodes, Titus Andrews, Sr., Gerald Torbert, and W.L. Sanders, in their capacity as members of the Greene County Board of Commissioners ("Board"), appeal the trial court's order granting to Chris Houston, in his capacity as Sheriff of Greene County ("Houston"), relief in the form of a declaratory judgment that a special tax district established by the Board is unconstitutional, and enjoining the Board from implementing the special tax district. For the reasons that follow, we affirm.

On March 17, 2009, the Board passed a resolution to create a special tax district to fund the Greene County Sheriff's Office, with the district covering the entire county. Houston brought suit against the Board seeking, inter alia: a declaratory judgment that the

---

State: And it's been three years?

Kendrick: Well, I learned, you know, to stay silent until you talk with your attorney.

establishment of such a special tax district was unconstitutional; a declaratory judgment that the Board's separate "Fleet Management Policy" regarding Sheriff's office vehicles was unconstitutional; that a writ of mandamus issue to require the Board to pay Houston's previously authorized salary supplement; and that injunctions issue preventing the Board from implementing the special tax district and the "Fleet Management Policy," and from further interfering with his duties. After a hearing, the superior court issued a declaratory judgment that the special tax district was unconstitutional, declared the resolution establishing it void, and enjoined the Board from implementing it. The court also ruled that the Board's action regarding Houston's salary supplement was legal, as the reduction would not take place during his then-current term of office, and that other prayers for relief were moot.[1] We review de novo the trial court's ruling that the Board's resolution was unconstitutional. See *Atlanta Oculoplastic Surgery, P.C. v. Nestlehutt*, 286 Ga. 731 (691 SE2d 218) (2010).

The power of county boards of commission in Georgia is not unlimited.

> Neither the counties of this state nor their officers can do any act, make any contract, nor incur any liability not authorized by some legislative act applicable thereto. If there is reasonable doubt of the existence of a particular power, the doubt is to be resolved in the negative. Powers of county commissioners are strictly limited by law, and they can do nothing except under authority of law.

*Mobley v. Polk County*, 242 Ga. 798, 801-802 (1) (251 SE2d 538) (1979) (citations omitted). See also *Boswell v. Bramlett*, 274 Ga. 50, 52 (2) (549 SE2d 100) (2001). As to the Board's authority to create a special tax district, our State Constitution provides:

> As hereinafter provided in this Paragraph, special districts may be created for the provision of local government services within such districts; and fees, assessments, and taxes may be levied and collected within such districts to pay, wholly or partially, the cost of providing such services therein and to construct and maintain facilities therefor. Such special districts may be created and fees, assessments,

---

[1] At the hearing, counsel for Houston stated that the Board had chosen not to proceed with the Fleet Management Policy issue, and that Houston would not pursue his prayers for relief regarding it. Houston has not appealed that portion of the court order addressing the Board's action regarding his salary supplement.

or taxes may be levied and collected therein by any one or more of the following methods:

(a) By general law which directly creates the districts.

(b) By general law which requires the creation of districts under conditions specified by such general law.

(c) By municipal or county ordinance or resolution, except that no such ordinance or resolution may supersede a law enacted by the General Assembly pursuant to subparagraphs (a) or (b) of this Paragraph.

Ga. Const. of 1983, Art. IX, Sec. II, Par. VI. The Board asserts that providing the functions of the Sheriff's office is a "local government service" within the meaning of this provision, and thus creating a special tax district to fund those functions is authorized by the Constitution.

Sheriffs are elected, constitutional officers, Ga. Const. of 1983, Art. IX, Sec. I, Par. III (a), with duties arising from statutory and common law. See *Elder v. Camp*, 193 Ga. 320 (18 SE2d 622) (1942); *Mayo v. Fulton County*, 220 Ga. App. 825 (1) (470 SE2d 258) (1996). They are not employees of county commissions. *Bd. of Commrs. of Randolph County v. Wilson*, 260 Ga. 482, 483 (1) (396 SE2d 903) (1990). The duties of sheriffs are beyond the control of county governing bodies, and those bodies may not interfere with such duties. *Wolfe v. Huff*, 233 Ga. 162 (210 SE2d 699) (1974); *Wolfe v. Huff*, 232 Ga. 44 (205 SE2d 254) (1974). Sheriffs clearly perform governmental services on a local level, and county governing bodies do have certain budgetary power regarding sheriffs' offices. See *Bd. of Commrs. of Dougherty County v. Saba*, 278 Ga. 176, 176-178 (1) (598 SE2d 437) (2004); *Chaffin v. Calhoun*, 262 Ga. 202, 203 (415 SE2d 906) (1992). However, the independence of the constitutional office of sheriff from the county governing body prompts the conclusion that the power to create special tax districts under Article IX, Section II, Paragraph VI of the Georgia Constitution does not embrace the creation of a special tax district for the provision of the services of this office.

This conclusion is further supported by an examination of the Home Rule provision of our State Constitution, which is found in Article IX, Section II, Paragraph I. This paragraph grants

[t]he governing authority of each county . . . legislative power to adopt clearly reasonable ordinances, resolutions, or regulations relating to its property, affairs, and local government for which no provision has been made by

general law and which is not inconsistent with this Constitution or any local law applicable thereto.[2]

---

[2] In its entirety, Art. IX, Sec. II, Par. I reads:

(a) **The governing authority of each county shall have legislative power to adopt clearly reasonable ordinances, resolutions, or regulations relating to its property, affairs, and local government for which no provision has been made by general law and which is not inconsistent with this Constitution or any local law applicable thereto.** Any such local law shall remain in force and effect until amended or repealed as provided in subparagraph (b). This, however, shall not restrict the authority of the General Assembly by general law to further define this power or to broaden, limit, or otherwise regulate the exercise thereof. The General Assembly shall not pass any local law to repeal, modify, or supersede any action taken by a county governing authority under this section except as authorized under subparagraph (c) hereof.

(b) Except as provided in subparagraph (c), a county may, as an incident of its home rule power, amend or repeal the local acts applicable to its governing authority by following either of the procedures hereinafter set forth:

(1) Such local acts may be amended or repealed by a resolution or ordinance duly adopted at two regular consecutive meetings of the county governing authority not less than seven nor more than 60 days apart. A notice containing a synopsis of the proposed amendment or repeal shall be published in the official county organ once a week for three weeks within a period of 60 days immediately preceding its final adoption. Such notice shall state that a copy of the proposed amendment or repeal is on file in the office of the clerk of the superior court of the county for the purpose of examination and inspection by the public. The clerk of the superior court shall furnish anyone, upon written request, a copy of the proposed amendment or repeal. No amendment or repeal hereunder shall be valid to change or repeal an amendment adopted pursuant to a referendum as provided in (2) of this subparagraph or to change or repeal a local act of the General Assembly ratified in a referendum by the electors of such county unless at least 12 months have elapsed after such referendum. No amendment hereunder shall be valid if inconsistent with any provision of this Constitution or if provision has been made therefor by general law.

(2) Amendments to or repeals of such local acts or ordinances, resolutions, or regulations adopted pursuant to subparagraph (a) hereof may be initiated by a petition filed with the judge of the probate court of the county containing, in cases of counties with a population of 5,000 or less, the signatures of at least 25 percent of the electors registered to vote in the last general election; in cases of counties with a population of more than 5,000 but not more than 50,000, at least 20 percent of the electors registered to vote in the last general election; and, in cases of a county with a population of more than 50,000, at least 10 percent of the electors registered to vote in the last general election, which petition shall specifically set forth the exact language of the proposed amendment or repeal. The judge of the probate court shall determine the validity of such petition within 60 days of its being filed with the judge of the probate court. In the event the judge of the probate court determines that such petition is valid, it shall be his duty to issue the call for an election for the purpose of submitting such amendment or repeal to the registered electors of the county for their approval or rejection. Such call shall be issued not less than ten nor more than 60 days after the date of the filing of the petition. He shall set the date of such election for a day not less than 60 nor more than 90 days after the date of such filing. The judge of the probate court shall cause a notice of the date of said election to be published in the official organ of the county once a week for three weeks immediately

But, that provision specifically limits the power of the county governing authority such that it cannot take action "affecting any

preceding such date. Said notice shall also contain a synopsis of the proposed amendment or repeal and shall state that a copy thereof is on file in the office of the judge of the probate court of the county for the purpose of examination and inspection by the public. The judge of the probate court shall furnish anyone, upon written request, a copy of the proposed amendment or repeal. If more than one-half of the votes cast on such question are for approval of the amendment or repeal, it shall become of full force and effect; otherwise, it shall be void and of no force and effect. The expense of such election shall be borne by the county, and it shall be the duty of the judge of the probate court to hold and conduct such election. Such election shall be held under the same laws and rules and regulations as govern special elections, except as otherwise provided herein. It shall be the duty of the judge of the probate court to canvass the returns and declare and certify the result of the election. It shall be his further duty to certify the result thereof to the Secretary of State in accordance with the provisions of subparagraph (g) of this Paragraph. A referendum on any such amendment or repeal shall not be held more often than once each year. No amendment hereunder shall be valid if inconsistent with any provision of this Constitution or if provision has been made therefor by general law.

In the event that the judge of the probate court determines that such petition was not valid, he shall cause to be published in explicit detail the reasons why such petition is not valid; provided, however, that, in any proceeding in which the validity of the petition is at issue, the tribunal considering such issue shall not be limited by the reasons assigned. Such publication shall be in the official organ of the county in the week immediately following the date on which such petition is declared to be not valid.

(c) **The power granted to counties in subparagraphs (a) and (b) above shall not be construed to extend to the following matters or any other matters which the General Assembly by general law has preempted or may hereafter preempt, but such matters shall be the subject of general law or the subject of local acts of the General Assembly to the extent that the enactment of such local acts is otherwise permitted under this Constitution:**

(1) **Action affecting any elective county office, the salaries thereof, or the personnel thereof, except the personnel subject to the jurisdiction of the county governing authority.**

(2) Action affecting the composition, form, procedure for election or appointment, compensation, and expenses and allowances in the nature of compensation of the county governing authority.

(3) Action defining any criminal offense or providing for criminal punishment.

(4) Action adopting any form of taxation beyond that authorized by law or by this Constitution.

(5) Action extending the power of regulation over any business activity regulated by the Georgia Public Service Commission beyond that authorized by local or general law or by this Constitution.

(6) Action affecting the exercise of the power of eminent domain.

(7) Action affecting any court or the personnel thereof.

(8) Action affecting any public school system.

(d) The power granted in subparagraphs (a) and (b) of this Paragraph shall not include the power to take any action affecting the private or civil law governing

elective county office . . . ." Ga Const. of 1983, Art. IX, Sec. II, Par. I (c) (1). And, this Court has previously stated that "the office of sheriff is specifically exempt from Home Rule." *Warren v. Walton,* 231 Ga. 495, 499 (202 SE2d 405) (1973). Although the Board contends that under its plan to create a special tax district, there would be no difference in the amount of funds ultimately appropriated for the Sheriff's Office, the occurrence of such a circumstance does not create a power that the Board is not otherwise granted. See *Mobley,* supra. Without the Board having the constitutional authority to create a special tax district funding the duties of a constitutional officer such as Houston, it was not error for the trial court to enter the declaratory judgment and to enjoin the implementation of the special tax district.[3]

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 12, 2010 —
RECONSIDERATION DENIED JULY 26, 2010.

*Runyan & Green, Michael S. Green,* for appellants.
*Brenda H. Trammell,* for appellee.
*Walker, Hubert, Gray, Byrd & Christy, Charles W. Byrd, James F. Grubiak, Kelly J. Pridgen, Ted C. Baggett, Susan J. Moore,* amici curiae.

---

private or civil relationships, except as is incident to the exercise of an independent governmental power.

(e) Nothing in subparagraphs (a), (b), (c), or (d) shall affect the provisions of subparagraph (f) of this Paragraph.

(f) The governing authority of each county is authorized to fix the salary, compensation, and expenses of those employed by such governing authority and to establish and maintain retirement or pension systems, insurance, workers' compensation, and hospitalization benefits for said employees.

(g) No amendment or revision of any local act made pursuant to subparagraph (b) of this section shall become effective until a copy of such amendment or revision, a copy of the required notice of publication, and an affidavit of a duly authorized representative of the newspaper in which such notice was published to the effect that said notice has been published as provided in said subparagraph has been filed with the Secretary of State. The Secretary of State shall provide for the publication and distribution of all such amendments and revisions at least annually.

Ga Const. of 1983, Art. IX, Sec. II, Par. I. (Emphasis supplied.)

[3] The Board asserts that a declaratory judgment was not authorized, but such an action may be instituted to "settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations . . . ." OCGA § 9-4-1. See *Higdon v. City of Senoia,* 273 Ga. 83, 85 (1) (538 SE2d 39) (2000).