## A11A0405. RICHARDSON v. PHILLIPS.
(711 SE2d 358)

MCFADDEN, Judge.

Bobby E. Richardson, Sr., a resident of Miller County, petitioned to remove Miller County commissioner Frankie C. Phillips from office for alleged illegal and unethical conduct. After the parties filed cross-motions for summary judgment, the trial court entered judgment for Phillips. Richardson appeals. Because the record shows that no illegal or unethical conduct occurred, we affirm.

This is the second time this case has been before us. See *Richardson v. Phillips*, 302 Ga. App. 305 (690 SE2d 918) (2010). The facts are detailed in our prior opinion, and we will not repeat them all here. Briefly, however, the evidence shows that in 1995, before her election to the county commission, Phillips purchased a building on the Miller County courthouse square. The seller, Hilda J. Grow,

---

financed the transaction. As part of the acquisition, Phillips gave Grow a promissory note for $42,000, as well as a deed to secure debt. Pursuant to the note, Phillips agreed to pay Grow $5,367 per year for 15 years. The note also subjected Phillips to a prepayment penalty if she paid off the debt before July 1, 2005. Id. at 305-306.

Phillips was elected to the Miller County Board of Commissioners in 1996. Four years later, she decided to sell the building to an entity that, in turn, planned to gift it to the County. That sale is at the crux of this dispute.

As we noted in our prior opinion, "[a] complex, multi-party transaction was structured under which title to the Property ultimately was to be conveyed to Miller County so that the Property could be used as a county office building." *Richardson*, supra at 306. The deal involved not only Phillips and the County, but Union Investment, Inc. and the Ruth T. Jinks Foundation, Inc., two corporations that managed the estate of a local family. Phillips sold the property to Union, which agreed to assume and pay off Phillips's outstanding indebtedness to Grow. Union then leased the property to the County. Although the County was obligated under the lease to make yearly payments of $5,367, the Jinks Foundation donated the required funds to the County prior to each payment. In July 2005, when the original prepayment penalty was no longer at issue, the Foundation donated to the County the amount needed to pay off the promissory note to Grow. Union then deeded the property to Miller County as a gift. See id. at 307. Ultimately,

> [t]he transaction was structured with the intent and purpose that the Property be deeded to Miller County without the use of any taxpayer funds, but in a manner that would compensate Phillips for the Property, would avoid having to pay the prepayment penalty to Grow, and would have tax advantages for the Jinks family estate.

Id. at 306.

Although Miller County obtained title to the property as a gift, Richardson filed the instant action in 2007, asserting that Phillips unethically and illegally transacted business with the County while she was a county commissioner. Richardson sought an order removing Phillips from office, as well as other declaratory relief. Following cross-motions for summary judgment, the trial court found that Richardson's claims were moot because the transaction had been completed and the County owned title to the property free and clear of any debt. It thus granted summary judgment to Phillips on all claims.

Richardson appealed, giving rise to our first opinion in this case.

We agreed with the trial court that Richardson's declaratory judgment claims should be dismissed. See *Richardson*, supra at 309-310 (1). But we refused to find that the completed transaction mooted Richardson's effort to remove Phillips from office. Id. at 310-311 (2). We thus vacated that portion of the summary judgment order and remanded the case for further proceedings on the removal claim. Id. at 311.

On remand, the trial court considered the merits of the parties' summary judgment arguments with respect to removal. Following a hearing, the court once again granted summary judgment to Phillips. This appeal followed.

In support of removal, Richardson argues that Phillips violated the Local Act creating the Miller County Board of Commissioners. See Ga. L. 1983, pp. 4594, 4603, § 14 (the "Local Act"). Pursuant to Section 14 of that Act:

> No member of the board . . . shall be financially interested directly or indirectly in any contract to which the county is a party, either as a principal, surety, or otherwise; nor shall such member of the board . . . purchase from or sell to the county any real or personal property, goods, or services. Any contracts made in violation of any of the foregoing provisions shall be illegal and the person who violates this section shall be removed from office upon proper proceedings instituted by any taxpayer of the county in accordance with the provisions of Code Section 36-1-14 of the OCGA, relating to the purchase of goods or property by interested county officers with county funds.

Id.

Phillips had an indirect financial interest in this transaction. Although Union agreed to assume her obligations to Grow, Grow "did not sign or otherwise agree to the Assumption Agreement, and it is undisputed that Phillips remained liable on the original promissory note." *Richardson*, supra at 306. Continued and timely payments under the note — including through the County's lease — were important to Phillips.

Based on this indirect financial interest, Richardson argues that Section 14 of the Local Act mandates Phillips's removal. As noted by Phillips, however, Section 14 references OCGA § 36-1-14, which also addresses the removal of county government officials. That Code section prohibits a county official from purchasing goods or property for public or county purposes

> from any person or partnership of which he is a member or

> by whom he is employed, unless by sanction of the majority of the members of the county governing authority or unless it is made clearly to appear that such individual [or] partnership . . . offers and will sell the goods or property as cheaply as or cheaper than the same can be bought elsewhere.

OCGA § 36-1-14 (a).

Reading OCGA § 36-1-14 (a) together with the Local Act, Phillips contends that a commissioner who engages in a County-involved real estate transaction should not be removed if the County receives property at no cost. In this case, the County was gifted a building on the courthouse square at no cost and free of any debt. Phillips certainly benefitted from the transaction. But so did the County, undermining the appearance of improper self-dealing.

Richardson, on the other hand, argues that the Local Act's reference to OCGA § 36-1-14 relates only to the technical process for removal contained in OCGA § 36-1-14 (b), not the basis for removal described in subsection (a). See OCGA § 36-1-14 (b) ("Any county governing authority, any member thereof, or any county officer violating subsection (a) of this Code section shall be removed from office upon proper proceedings instituted by any taxpayer in the county. Any contract made in violation of subsection (a) of this Code section shall be illegal."). He further argues that, for purposes of Miller County, the Local Act's strict removal requirements "pro tanto repeal[ed]" the less stringent standard in OCGA § 36-1-14 (a).

To support these arguments, Richardson cites *Moore v. Whaley*, 189 Ga. 647, 649 (1) (7 SE2d 394) (1940), which explains that the legislature may "pass separate and distinct acts for any counties which require county commissioners, and it is not necessary that these acts . . . be uniform in their operation in all such counties." The legislature may also use local acts to amend or supersede general statutes that might otherwise apply to a county commission. Id.; *SCA Svcs. of Ga. v. Fulton County*, 238 Ga. 154, 156 (231 SE2d 774) (1977). According to Richardson, the strict removal language in Section 14 supersedes any provision in OCGA § 36-1-14 (a) that might offer Phillips relief.

A narrow interpretation of the Local Act, however, is not necessarily proper. Ultimately, we must determine the General Assembly's intent in enacting the legislation. See *Moore*, supra at 650 (2). Such intent controls over the literal meaning of the terms used. See *Randolph County v. Bantz*, 270 Ga. 66, 67 (508 SE2d 169) (1998). And "[o]ur system of law is not to be construed by single Code sections or single provisions of the law; the entire system must be construed as a whole to determine the intent and purpose of the

law as applied to each particular case or state of facts." (Punctuation omitted.) *Weldon v. Bd. of Commrs. of Monroe County*, 212 Ga. App. 885, 887 (2) (443 SE2d 513) (1994) (applying rules of statutory construction to interpretation of local law and general statute). Legislation relating to the same subject matter should be "construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto." (Punctuation omitted.) Id. See also *Morgan v. Woodard*, 253 Ga. 751, 752 (325 SE2d 369) (1985) (local act and general statute that are "interwoven" should be considered "in pari materia").

Section 14 of the Local Act specifies that any removal effort proceed pursuant to OCGA § 36-1-14. The legislature, therefore, clearly intended that the two pieces of legislation be read together. Compare *Moore*, supra at 651 (local act regarding removal of county commissioners did not mention general removal statute, and the two acts offered different bases for removal; the local act, therefore, pro tanto repealed general statute). Although Richardson contends that we should only construe the Local Act in conjunction with OCGA § 36-1-14 (b), nothing in Section 14 requires this result. On the contrary, Section 14 references the *provisions* (plural) of OCGA § 36-1-14. Those provisions establish a process for removing county officials who engage in prohibited "interested transactions." They also exempt from the prohibition any transaction through which a county acquires property "as cheaply as or cheaper than the same can be bought elsewhere." OCGA § 36-1-14 (a).

The legislature could have drafted the Local Act in a manner that referenced only the removal procedures in OCGA § 36-1-14 (b). But it did not. The local legislation cites to the entire statute, which includes the exemption at issue here. This broad reference is instructive. See *Gavin v. State*, 292 Ga. App. 402, 405 (664 SE2d 797) (2008) ("Because the legislature could have expressly created the exception urged by [the appellant], we find it instructive that it did not.").

Moreover, the Local Act already includes the substantive language from OCGA § 36-1-14 (b). Like subsection (b), the Local Act deems any contract made in violation of its provisions illegal. Both pieces of legislation also state that individuals who engage in illegal transactions "shall be removed from office upon proper proceedings instituted by any taxpayer" in the county. OCGA § 36-1-14 (b); Ga. L. 1983, pp. 4594, 4603, § 14. The Local Act then directs that any removal proceed in accordance with OCGA § 36-1-14.

"Under the rules of statutory construction, we must construe all related statutes together, give meaning to each part of the statute, and avoid constructions which result in surplusage and meaningless language." (Citation and punctuation omitted.) *Velasquez v. State*,

276 Ga. App. 527, 530-531 (2) (623 SE2d 721) (2005). If, as Richardson contends, the General Assembly only intended to import OCGA § 36-1-14 (b) into the local legislation, the procedural language already appearing in the Local Act would be mere surplusage. Conversely, since the procedural language from OCGA § 36-1-14 (b) is in the Local Act, Richardson's reading makes the Local Act's reference to OCGA § 36-1-14 superfluous.

Richardson asks us to construe the Local Act in a way that renders much of its language meaningless. This we cannot do. See *Velasquez*, supra. The trial court properly harmonized the local and general statutory legislation to find that Phillips's actions — which benefitted the County at no cost to taxpayers — do not require her removal. Accordingly, we affirm.

*Judgment affirmed. Andrews, J., concurs. Phipps, P. J., concurs in judgment only.*

DECIDED JUNE 3, 2011 — 

*William D. Hall, David A. Webster*, for appellant.
*O'Quinn & Cronin, Michael A. O'Quinn*, for appellee.