S11A1502. BOARD OF COMMISSIONERS OF MILLER COUNTY et al. v. CALLAN et al.
(720 SE2d 608)

CARLEY, Presiding Justice.

The Board of Commissioners of Miller County (Board) was created by Ga. L. 1983, p. 4594 (Local Act). Section 14 of the Local Act prohibits members of the Board from transacting business with the County. Ga. L. 1983, pp. 4594, 4603. Section 10 provides that all bills shall be paid by check signed by the clerk, who is not an elected official, and by the chairman or vice-chairman. Ga. L. 1983, pp. 4594, 4601. In April 2010, pursuant to its constitutional home rule powers, the Board enacted Ordinance No. 10-01, which amended these two sections of the Local Act. Ga. L. 2010, pp. 4192, 4194, 4198. Section 3 of the Ordinance amended section 14 of the Local Act by adding a provision that section 14 would not apply where a majority of the Board approves the contract or transaction after establishing that the goods, services or property cannot be obtained for less and that

the taxpayers' interests would be served. Section 2 of the Ordinance amended section 10 of the Local Act by providing that all bills shall be paid by check signed by at least two of the following officials: the chairman or vice-chairman, the clerk, and the chair of the Board's finance committee.

In June 2010, three individuals who are residents, registered voters, and taxpayers of Miller County (Appellees) brought suit against the Board and its members in their individual and official capacities (Appellants), alleging that sections 2 and 3 of the Ordinance are unconstitutional and seeking declaratory judgment and injunctive relief, as well as nominal damages and expenses of litigation, including attorney's fees. On cross-motions for summary judgment, the trial court declared sections 2 and 3 of the Ordinance unconstitutional, denied Appellants' motion for summary judgment, granted partial summary judgment in favor of Appellees on their claims for declaratory judgment and injunctive relief, as well as the affirmative defenses of legislative, sovereign, governmental, official, or other immunity, and reserved the remaining claims for trial. Appellants filed a timely notice of appeal from this order.

1. Appellants contend that the trial court erred in ruling that sections 2 and 3 of the Ordinance violate certain home rule provisions of the Georgia Constitution of 1983. Specifically, the trial court held that both sections of the Ordinance violate subparagraph (a) of Art. IX, Sec. II, Par. I, that section 3 violates subparagraph (c) (1) of that same paragraph, and that section 2 violates subparagraph (c) (2) thereof.

We begin by recognizing that "[t]he power of county boards of commission in Georgia is not unlimited." *Channell v. Houston*, 287 Ga. 682, 683 (699 SE2d 308) (2010). "[N]either the counties of this state nor their officers have the power to do any act, make any contract, or incur any liability not expressly authorized by a legislative grant of power or necessarily implied from an express legislative grant of power. [Cits.]" *Stephenson v. Bd. of Commissioners of Cobb County*, 261 Ga. 399, 400 (2) (a) (405 SE2d 488) (1991). However, "[t]he Georgia Constitution grants home rule to counties." *Krieger v. Walton County Bd. of Commissioners*, 269 Ga. 678, 679 (1) (506 SE2d 366) (1998) (*Krieger I*).

(a) Both the county and the municipal "home rule systems confer two 'legislating' powers upon local governments. . . . At the first tier, the governing authority is empowered to adopt measures for its municipality or county that do not rise to the level of affecting state legislation." R. Perry Sentell, Jr., *The Georgia Home Rule System*, 50 Mercer L. Rev. 99, 133 (III) (A) (4) (1998). This first power enables county commissions "to adopt clearly reasonable ordinances, resolutions, or regulations relating to its property, affairs, and local

government for which no provision has been made by general law and which is not inconsistent with this Constitution or any local law. . . ." Ga. Const. of 1983, Art. IX, Sec. II, Par. I (a). "When controversy arises over the first-tier delegation, the governing authority is seeking to function within its existing charter or local statutes and to utilize this additional grant of power." Sentell, supra.

However, "[t]he second-tier delegation constitutes the system's most extensive grant of local 'legislating' power; it comprises, no less, the essence of Georgia's home rule complex." Sentell, supra at 136 (III) (A) (5). Art. IX, Sec. II, Par. I (b) provides that, "[e]xcept as provided in subparagraph (c), a county may, as an incident of its home rule power, amend or repeal the local acts applicable to its governing authority by following either of the procedures hereinafter set forth . . . ." Under this delegation, counties "are empowered to change existing state law. . . . [T]he anticipated modifications are amendments or repeals of local statutes 'applicable to (the) governing authority.' [Cit.]" Sentell, supra. The Ordinance here expressly and specifically "amended" sections 10 and 14 of the Local Act. Ga. L. 2010, pp. 4192, 4194, 4198. "[T]hat action could be sustained only under the second-tier delegation . . . ." Sentell, supra at 137 (III) (A) (5) (a). Therefore, Art. IX, Sec. II, Par. I (a) is irrelevant to the home rule analysis, and sections 2 and 3 of the Ordinance cannot be said to "violate" that subparagraph. A careful reading of the trial court's order shows that it held otherwise only by blurring the distinction between the two delegations of legislating power set forth in subparagraphs (a) and (b). Such blurring is easy to occur and has happened before. Sentell, supra. Thus, "the obvious but crucial distinction between the legislating delegations bears reemphasis. First-tier delegations are subservient to local statutes. Second-tier delegations (by either procedure) are employed to change local statutes." Sentell, supra.

(b) Subparagraph (c) of Art. IX, Sec. II, Par. I of the Georgia Constitution of 1983

> proscribes the application of home rule authority as to certain enumerated matters which are subject to general law or local acts of the legislature. Specifically, home rule authority shall not extend to an "(a)ction affecting any elective county office, the salaries thereof, or the personnel thereof, except the personnel subject to the jurisdiction of the county governing authority," subparagraph (c) (1), or an ["a]ction affecting the [composition or] form . . . of the county governing authority." Subparagraph (c) (2).

*Krieger v. Walton County Bd. of Commissioners*, 271 Ga. 791,

792-793 (1) (524 SE2d 461) (1999) (*Krieger II*).

The trial court held, and Appellees argue, that section 2 of the Ordinance here violates subparagraph (c) (2) because it confers executive powers on the chair of the finance committee without requiring him to be an elected commissioner. An ordinance which pertains to personnel subject to the jurisdiction of the county governing authority, which is administrative in nature, and which does not confer executive powers on such personnel cannot be considered an action affecting the composition or form of county government. *Krieger II*, supra; *Krieger I*, supra at 680 (1). Section 2 amends only the last sentence of section 10 of the Local Act. Thus, left unchanged is the Local Act's requirement that all bills be "submitted to the [B]oard for approval . . . and if approved at a regular meeting of the [B]oard, approval shall be endorsed on said bills by the chairman." Ga. L. 1983, pp. 4594, 4601. Such endorsement clearly constitutes the exercise of executive authority. After approval and endorsement, section 2 mandates that "[a]ll bills shall be paid by check which shall be signed by at least two (2) of the [named] officials . . . ." Ga. L. 2010, pp. 4192, 4194, 4198. "The use of the word 'shall' in [section 2] clearly indicates that the [finance chair] has a ministerial and mandatory duty, rather than a discretionary duty, to sign the checks." *Stork v. Sommers*, 630 A2d 984, 987 (II) (Pa. Commw. Ct. 1993). In other words, the finance chair's "check-signing authority extended only to those expenses that were approved for payment by" the Board. *Michaud v. United States*, 40 Fed. Cl. 1, 22 (I) (B) (1) (1997). Where an employee has no decision-making power beyond the ministerial duty of cosigning checks, a court cannot justifiably conclude that the individual controls the allocation of funds or possesses authority over expenditures. *Heimark v. United States*, 18 Cl. Ct. 15, 23 (1989). We conclude that section 2 conferred only administrative rather than executive authority on the chair of the Board's finance committee and that it therefore did not violate Art. IX, Sec. II, Par. I (c) (2) by affecting the composition or form of the Board.

The trial court further held, and Appellees argue, that section 3 of the Ordinance violates Art. IX, Sec. II, Par. I (c) (1) because, contrary to section 14 of the Local Act, section 3 of the Ordinance grants authority for commissioners to transact business with the County and places duties on the commissioners to consider proposed transactions, approve or disapprove them, and make findings of fact to be recorded in the Board's minutes. The argument that section 3 affects an elective office in violation of subparagraph (c) (1) is particularly weak if OCGA § 36-1-14 still applies to Miller County, because that statute is quite similar to section 3. The trial court determined, and Appellees contend, that section 14 of the Local Act

repealed OCGA § 36-1-14 pro tanto with respect to Miller County commissioners. However, the Court of Appeals recently rejected this identical contention. *Richardson v. Phillips*, 309 Ga. App. 773, 776-778 (711 SE2d 358) (2011) (physical precedent). Regardless of whether the Court of Appeals was correct in *Richardson*, we conclude that section 3 of the Ordinance did not constitute an action affecting the elective office of commissioner in violation of Art. IX, Sec. II, Par. I (c) (1).

"[A]n action of a county governing authority could 'affect' an elective county office . . . if that action negatively impacted on the ability of the elective county officer . . . to perform the[ ] job[ ]. [Cit.]" *Stephenson v. Bd. of Commissioners of Cobb County*, supra at 401-402 (4). Even if OCGA § 36-1-14 was repealed pro tanto and section 3 therefore had the effect of granting the commissioners a limited new authority to permit a commissioner to transact business with the County subject to certain standards and procedures, section 3 "does not by itself negatively impact on the ability of [the commissioners] to carry out their duties." *Stephenson v. Bd. of Commissioners of Cobb County*, supra at 402 (4). Instead, section 3 at most gives the Board an additional option, similar to that given by general law to many other county governing authorities, for purchasing goods, property or services if a majority of the commissioners desires to utilize that option after establishing that the goods, services or property cannot be obtained for less and that the taxpayers' interests would be served. Compare *Channell v. Houston*, supra (changing the source of funding for the independent elective office of sheriff, whose duties are beyond the control of the county governing authority, by creating a special tax district).

2. Appellants also contend that the trial court erred in ruling that section 3 of the Ordinance violates the uniformity clause in the Georgia Constitution of 1983, which reads as follows:

Laws of a general nature shall have uniform operation throughout this state and no local or special law shall be enacted in any case for which provision has been made by an existing general law, except that the General Assembly may by general law authorize local governments by local ordinance or resolution to exercise police powers which do not conflict with general laws.

Ga. Const. of 1983, Art. III, Sec. VI, Par. IV (a). "The first part provides the rule that general laws preempt local or special laws on the same subject; the second part excepts from this rule local laws permitted by, and not conflicting with, the general law." *Pawnmart v. Gwinnett County*, 279 Ga. 19 (1) (608 SE2d 639) (2005). See also

*Franklin County v. Fieldale Farms Corp.*, 270 Ga. 272, 275 (2) (507 SE2d 460) (1998). The trial court decided, and Appellees argue, that section 3 of the Ordinance is preempted by OCGA §§ 36-1-14 and 16-10-6.

(a) " 'Generally preemption is based on legislative intent.' [Cit.]" *City of Atlanta v. S.W.A.N. Consulting & Security Services*, 274 Ga. 277, 279 (2) (553 SE2d 594) (2001). If, as the trial court ruled, the General Assembly repealed OCGA § 36-1-14 pro tanto with respect to Miller County commissioners, then the legislative intent that that statute not preempt Board action regarding a commissioner's transaction of business with the County is clear. Indeed, in that case, it could not be said that provision for that subject matter "has been made by an existing general law . . . ." Ga. Const. of 1983, Art. III, Sec. VI, Par. IV (a).

On the other hand, if *Richardson* is correct and OCGA § 36-1-14 has not been repealed, then provision for the same subject matter of section 3 has been made by general law, and we must proceed to the second part of the uniformity clause providing "for an exception to the general rule of preemption when general law authorizes the local government to act and the local ordinance does not conflict with general law." *Franklin County v. Fieldale Farms Corp.*, supra. OCGA § 36-5-22.1 (a) (1) gives each county governing authority original and exclusive jurisdiction over "[t]he directing and controlling of all the property of the county, according to law, as the governing authority deems expedient." Moreover, as already discussed, the County had authority, as an incident of its home rule power, to amend section 14 of the Local Act. Ga. Const. of 1983, Art. IX, Sec. II, Par. I (b).

As for the matter of conflict with general law, "[w]e have concluded that there was no conflict when the local law did not impair the general law's operation but rather augmented and strengthened it. [Cits.]" *Franklin County v. Fieldale Farms Corp.*, supra. OCGA § 36-1-14 (a) prohibits counties from purchasing goods or property from any store in which a county officer has an interest unless sanctioned by a majority of the county governing authority or unless it is made clearly to appear that the goods or property is offered as cheaply as or cheaper than elsewhere. Section 3 of the Ordinance leaves intact the broader and more detailed provisions of section 14 of the Local Act that County officers are prohibited from having any financial interest in County contracts and further that any agent of a firm which employs the officer or in which he has an interest is prohibited from selling to or purchasing from the County any property, goods or services. The exception in section 3 of the Ordinance is more narrow than in OCGA § 36-1-14, requiring that a majority of the Board approve the contract or transaction after establishing that the goods, services or property cannot be obtained

for less and that the taxpayers' interests would be served. Therefore, even assuming that OCGA § 36-1-14 remains applicable, section 3 of the Ordinance does not impair its operation but rather strengthens and augments it. Accordingly, section 3 could not be preempted by OCGA § 36-1-14.

(b) OCGA § 16-10-6 has made provision for the same subject matter as section 3 of the Ordinance. Thus, we must determine whether section 3 comes within the exception to preemption with respect to OCGA § 16-10-6. *Franklin County v. Fieldale Farms Corp.*, supra. As already discussed, the County was authorized to enact section 3 so long as it did not conflict with general law. Ga. Const. of 1983, Art. IX, Sec. II, Par. I (b); OCGA § 36-5-22.1 (a) (1); *Franklin County v. Fieldale Farms Corp.*, supra.

OCGA § 16-10-6 (b), (c), which unlike section 3 does not apply to services, makes it a crime for a local government officer or employee on behalf of himself or a business entity to sell any real or personal property to the employing political subdivision or certain related entities unless the sale of personal property is less than $800 per calendar quarter or is made pursuant to sealed competitive bids or the sale of real property is fully and timely disclosed to the judge of the probate court. Contrary·to the trial court's order, section 3 of the Ordinance does not purport to supplant this statute. The effect of the amendment by section 3 on section 14 of the Local Act is to prohibit even those transactions which are allowed by OCGA § 16-10-6 and to make exception for that broad prohibition where a majority of the Board approves the transaction after establishing that the goods, services or property cannot be obtained for less and that the taxpayers' interests would be served. If section 3 is held constitutional, OCGA § 16-10-6 can still be fully enforced in Miller County. In short, the effect of section 3 is to strengthen OCGA § 16-10-6 by a broader prohibition with additional specific requirements for any exception. See *Pawnmart v. Gwinnett County*, supra at 21 (3); *Grovenstein v. Effingham County*, 262 Ga. 45, 47 (1) (414 SE2d 207) (1992). Because section 3 of the Ordinance does not impair OCGA § 16-10-6 but rather effectively augments and strengthens it, that statute does not preempt section 3.

3. Accordingly, the trial court erred in declaring sections 2 and 3 of the Ordinance unconstitutional, in granting partial summary judgment in favor of Appellees on their claims for declaratory judgment and injunctive relief, and in denying Appellants' motion for summary judgment. The remaining enumeration of error regarding Appellants' immunity defenses is moot.

*Judgment reversed. All the Justices concur.*

334

*Alexander & Vann, William C. Sanders, Raleigh W. Rollins*, for appellants.

*Boone & Stone, David W. Boone, William S. Stone, Andy J. Williams, Jr., Simone R. Siex, Antoinette Davis*, for appellees.